UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DONNA PACCHETTI, | |
| Plaintiff, | No. 18 C 5650 |
| v. | Judge Thomas M. Durkin |
| STEAK N SHAKE OPERATIONS, INC.; STEAK 'N SHAKE ENTERPRISES, INC.; and STEAL 'N SHAKE, INC., | |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

Donna Pacchetti alleges that defendant Steak 'N Shake negligently maintained a sidewalk entry to one of its restaurants causing her to fall and injure her arm. Pacchetti has engaged a landscape architect, Christine Meske, as an expert witness. Defendant seeks to bar Meske from testifying. R. 30. That motion is denied in part and granted in part.

**Background**

On August 14, 2016, Pacchetti had lunch with a friend at a Steak N' Shake restaurant they had been to several times before. After lunch, Pacchetti's friend left the restaurant, and Pacchetti stayed to pay the bill. The exit Pacchetti used opened on to a sidewalk that paralleled the restaurant's south wall on the left, separated by a section of landscaping filled with lava rock mulch. On the right was a section of the parking lot. As the sidewalk proceeded away from the door, it sloped down and then up again to accommodate wheelchair access from the parking lot on the right. As the sidewalk sloped down, a curb between the sidewalk and the landscaping bed on the

left remained level, such that at the sidewalk's lowest point the curb was five inches higher than the sidewalk. As the sidewalk sloped up again, the height of the curb decreased such that it was eventually less than an inch higher than the sidewalk. *See* R. 31-2 at 53-55.

The sidewalk eventually turned left at a 90-degree angle around the southeast corner of the restaurant. Pacchetti's car was parked around that corner on the east side of the restaurant. A security camera recording shows that as Pacchetti turned left heading for her car, she cut the corner, stepped into the landscaping area, and tripped against the edge of the sidewalk that bordered the eastern end of the landscaping bed. Pacchetti fell, injuring her arm.

Pacchetti plans to have a landscape architect, Christine Meske, testify at trial. Meske produced a report including the following opinions:

1. "The video surveillance film of the accident shows that the shrubs on the east side were encroaching upon the sidewalk on the day of the accident and, though not visible in the video, those on the south side might have been as well. If so, the shrubs could have contributed to the precariousness of the conditions; their thorns had to be avoided and they might have blocked [the] view of some of the elevation changes." R. 31-2 at 2.

2. Lava rock "is porous and airy and thus easily moved around by water, wind, animals, people, and equipment." *Id.* at 2.

3. Lava rock is a common mulch material, but "[i]t is important to maintain a consistent elevation along it surface, particularly along lines of travel where it can be stepped on or otherwise disturbed." *Id.*

4. "The mulch material in this area [where Pacchetti fell] was not level with the sidewalk surface. . . . causing a tripping hazard to pedestrian traffic traversing the area." *Id.* at 3.

2

5. "[I]t is understood in site design that people generally do not turn themselves at [right] angles as they walk[.]" Therefore, "designing in a way that responds to human nature usually means providing a triangle or curved edge at sidewalk intersection to keep a paved surface under people as they change directions." *Id.*

6. "This problem, and the risk it posed for pedestrian traffic, was foreseeable. Rounding or cutting the corner to get to the parking lot would be a foreseeable part of a natural pedestrian route." *Id.*

## Analysis

Defendant argues that Meske is not qualified to testify as an expert under Federal Rule of Civil Procedure 702. A person may testify as an expert under Rule 702 if: (1) their testimony will "help the trier of fact to understand the evidence or to determine a fact in issue"; (2) their testimony "is based on sufficient facts or data"; (3) their testimony "is the product of reliable principles and methods"; and (4) the person "has reliably applied the principles and methods to the facts of the case." According to the Supreme Court, district courts must apply Rule 702 by acting as "gatekeepers" to prevent irrelevant or unreliable testimony from being admitted. *See Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993); *Lapsley v. Xtek, Inc.*, 689 F.3d 802, 809 (7th Cir. 2012). This gatekeeper function applies to all expert testimony, not just testimony based in science. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147-48 (1999). In performing its gatekeeping function, a court's primary concern is with "the validity of the methodology employed by an expert." *Manpower, Inc. v Ins. Co. of Pa.*, 732 F.3d 796, 806 (7th Cir. 2013). By contrast, the "soundness of the factual underpinnings of the expert's analysis" is "to be determined by the trier of fact." *Smith v. Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir. 2000). "Vigorous cross-

3

examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert,* 509 U.S. at 596. Nevertheless, district courts have "wide latitude in performing [their] gatekeeping function and determining both how to measure the reliability of expert testimony and whether the testimony itself is reliable." *Lapsley*, 689 F.3d at 809. The Court will apply this standard to each of Meske's opinions.

### 1. "the shrubs could have contributed to the precariousness of the conditions"

Meske concedes that she has no knowledge of the condition of the shrubs along the southern wall of the restaurant—where Pacchetti was walking prior to falling—at the time of Pacchetti's accident. Furthermore, her opinion that a pedestrian would try to avoid thorny shrubs is expressed just as matter of common sense and not the product of any reliable method that would be helpful to the jury. Therefore, Meske is barred from testifying that a lack of pruning of the landscaping shrubs caused Pacchetti's accident.

### 2. Lava rock "is porous and airy and thus easily moved around by water, wind, animals, people, and equipment."

Defendant does not object to this opinion. As a landscape architect, Meske is qualified to testify about the qualities of landscape mulch. This information is relevant to the case because video evidence shows the Meske stepped on the mulch before she fell.

3. **Lava rock is a common mulch material, but "[i]t is important to maintain a consistent elevation along it surface, particularly along lines of travel where it can be stepped on or otherwise disturbed."**

Defendant does not object to this opinion either. And similar to the previous opinion about the qualities of lava rock mulch, Meske, as a landscape architect, is qualified to testify about its standard application and use. Again, this information is relevant to the case because Pacchetti stepped on the mulch before she fell.

4. **"The mulch material in this area [where Pacchetti fell] was not level with the sidewalk surface. . . . causing a tripping hazard to pedestrian traffic traversing the area."**

Meske concedes that she has no knowledge of the level of the mulch at the time Pacchetti fell. Pacchetti did not measure it the day she fell, so Meske does not have access to this information.

To the extent Meske intends to testify that she can infer that the mulch was several inches below the sidewalk because no mulch was kicked up onto the sidewalk when Pacchetti fell, Meske has not identified any method or studies underlying that opinion. As discussed, Meske can testify that lava rock mulch is light and airy. But she has not explained how she knows that lava rock should have been kicked up by Pacchetti's fall other than common sense speculation that the rock was so light that it would not have remained in place unless it was several inches below the sidewalk. Counsel can make such an argument to the jury based on Meske's testimony that the rock is light, and by introducing some of the rock itself into evidence. But Meske may not offer an opinion on that argument.

5

Moreover, even if there is some other evidence of the height of the mulch at the time of Pacchetti's fall, Meske has offered no method of assessing that risk or the likelihood that it caused Pacchetti's fall, other than her commonsense speculation. Meske has not pointed to any study, let alone a reliable one, that would enhance a juror's ability to assess the risk of a difference in height between a sidewalk and adjoining landscape mulch. Therefore, Meske may not testify to this risk or that the height of the landscape mulch caused Pacchetti's fall.

### 5. "people generally do not turn themselves at [right] angles" and walkways should provide "a triangle or curved edge at sidewalk intersection"

Meske is an expert regarding principles of landscape architecture. She may testify as to what those principles provide regarding design of sidewalks and pathways. In other words, Meske may testify that principles of landscape architecture provide that sidewalks should not be constructed with 90-degree turns.

But there is nothing in Meske's report or deposition explaining *why* this is a principle of landscape architecture other than the unsupported assertion that "people generally do not turn themselves [at] right angles." Maybe landscape architects prefer curves based on tradition or common sense. But neither tradition nor common sense is a reliable method justifying expert testimony about how human beings generally move. If there are reliable studies underlying this principle of landscape architecture, Meske has not identified them. Therefore, Meske may not testify as to how human beings "generally" move about.

6.  **"This problem, and the risk it posed for pedestrian traffic, was foreseeable. Rounding or cutting the corner to get to the parking lot would be a foreseeable part of a natural pedestrian route."**

Even if Meske could reliably testify regarding human tendencies of movement, she still might not be able to testify about the potential risk of sidewalks designed with 90-degree turns. Just because landscape architects prefer to design sidewalks in accordance with the what they believe to be the tendencies of human movement, does not necessarily explain the risk of a sidewalk designed with a 90-degree angle. In other words, even if Meske had identified and explained a reliable study showing that people do not generally turn at 90-degrees, it is not certain that such a study would have also explained that a 90-degree turn is unreasonably dangerous. The Court finds that neither of these two different opinions—i.e., the opinion that humans do not generally turn at 90-degree angles, and that sidewalks with 90-degree turns are unreasonably dangerous—are supported by Meske's report or deposition testimony.

## Conclusion

Therefore, Defendant's motion to bar Christine Meske from testifying at trial [30] is denied in part and granted in part.

ENTERED:

_____
Honorable Thomas M. Durkin
United States District Judge

Dated: April 8, 2020

7